UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
CHARLOTTE DENISE AYRES-HALEY              )    Case No. 07-10314-SSM
                                          )    Chapter 13
            Debtor                        )

## MEMORANDUM OPINION

Before the court is the objection of Gerald M. O'Donnell, chapter 13 trustee, to Claim No. 3-2 filed by Americredit Financial Services, Inc. ("Americredit") in the amount of $11,579.34.  The claim—which was filed two months after the trustee filed his report of completion of plan payments—represents the deficiency after Americredit was granted relief from the automatic stay to liquidate its collateral, an automobile.  A hearing was held on January 9, 2008, at which Americredit and the debtor were present by counsel and the chapter 13 trustee was present in person.  Because Americredit's unsecured claim (amending its previously-filed secured claim) was filed not only after the claims bar date but after the completion of plan payments, and because Americredit did not object to confirmation of a plan that placed responsibility for paying the secured claim on the debtor rather than the trustee, the trustee's objection will be sustained.

<u>Background</u>

Charlotte Denise Ayres-Haley ("the debtor") filed a voluntary petition in this court on February 12, 2007, for adjustment of her debts under chapter 13 of the Bankruptcy Code. Among the creditors listed on her schedules was Americredit, which was secured by a 2004

1

Mazda 6 station wagon valued by the debtor at $12,000. Her plan, filed on February 26, 2007, was confirmed without objection on April 24, 2007. It required her to pay the chapter 13 trustee $266.00 per month for 6 months, plus a lump sum payment of $27,000 in the final month. The estimated distribution on unsecured claims was 100 cents on the dollar. Relevant to the present controversy, the plan provided for the debtor to make direct payment to Americredit of the regular monthly payments of $491.00 "pursuant to the contract" on its claim, with the trustee to pay the prepetition arrears in the estimated amount of $491.60.

    The bar date for non-governmental creditors to file proofs of claim was June 18, 2007. On March 2, 2007, Americredit filed a proof of claim (Claim No. 3-1) in the amount of $17,418.47 as a fully-secured creditor, with an arrearage claim of $491.60.[1] The proof of claim asserts the value of the collateral, a used 2004 Mazda 6 motor vehicle, to be $17,418.47. The retail installment contract attached as an exhibit to the proof of claim shows the cash price of the vehicle to have been $17,955.00 and the amount financed to have been $18,372.15. The payments required by the contract were $491.60 per month for 60 months beginning April 13, 2006.[2]

---

[1] Americredit erroneously states in its memorandum that it filed a proof of claim asserting <u>both</u> a $17,418.47 secured claim and an $11,579.34 unsecured claim. This is incorrect (as a simple inspection of the actual proof of claim will show) and results from a misreading of the claims register  Americredit filed two proofs of claim. The first was a secured claim in the amount of $17,418.47. The second, which is the subject of the present objection, was an unsecured claim in the amount of $11,579.34. When the second claim was filed, the clerk, although correctly noting that the second claim was an amendment of the first, showed the unsecured amount as an addition to, rather than a superceding of, the previous secured amount, so that both now appear on the claim summary. Be that as it may, the simple fact is that Americredit asserted <u>only</u> a secured claim in its initial proof of claim.

[2] The annual percentage rate is shown as 20.5%

On April 6, 2007, the debtor filed a motion for authority to sell her real estate (which was the intended source of the lump-sum payment contemplated by her plan). The motion was granted on May 11, 2007, after notice and a hearing, with the order directing that the entire net proceeds of sale be paid to the chapter 13 trustee, since the claims bar date had not passed. The closing took place on May 31, 2007, with the net proceeds being $24,957.25. In the meantime, Americredit had filed a motion on May 16, 2007, for relief from the automatic stay alleging that the debtor had defaulted in making the post-petition payments due under the installment sales contract. That motion was granted on August 27, 2007,[3] and presumably Americredit repossessed and sold the vehicle sometime soon thereafter. In any event, on September 19, 2007 (approximately 3 weeks after the relief from stay motion was granted), the trustee filed a report of completion of plan payments, and the debtor was issued a discharge two days later. The trustee filed a final report and account on November 16, 2007, showing that he had received a total of $27,151.25, from which he had paid priority and unsecured claims totaling $9,586.77, administrative expenses of $4,951.90, and a refund of $12,612.58 to the debtor. The case was then closed on November 19, 2007.

On November 19, 2007—the same day as the case was closed, and fully two months after the trustee filed his report of completion of plan payments (not to mention five months after the

---

[3] The preliminary hearing on the relief from stay motion was scheduled for June 6th, but was continued, apparently by agreement of the parties, to July 18th, when it was orally granted. For reasons that are not clear, an order reflecting the court's ruling was not entered on the docket until August 27, 2007.

claims bar date)—Americredit filed the proof of claim that is currently before the court asserting an unsecured deficiency claim in the amount of $11,579.34.[4]

Discussion

I.

The trustee objects to Americredit's amended proof of claim on the ground that he had already filed his final report and had no funds on hand with which to pay the claim. As Americredit correctly notes, this essentially begs the question of whether he had a duty to pay the claim. However, because the court agrees with the trustee that he did not, the objection will be sustained, albeit on somewhat different grounds than articulated by the trustee.

A.

At the outset, several principles are worth reviewing. A creditor seeking to be paid in a chapter 13 case is required to file a proof of claim by the claims bar date. Fed.R.Bankr.P. 3002(a) and (c); *In re Nwonwu*, 362 B.R. 705, 707 (Bankr. E.D. Va. 2007) Unless objected to, a filed claim is deemed allowed. § 502(a), Bankruptcy Code. The treatment of the claim, however, is governed by the plan, which, once confirmed, binds the debtor and each creditor. § 1327(a), Bankruptcy Code. In the present case, Americredit filed a timely proof of claim—to which no objection was filed—asserting a fully-secured claim in the amount of $17,418.47. Except for a $491.60 prepetition arrearage (which was to be paid by the trustee), the plan provided that the contractual payments going forward would be made by the debtor. Thus, although Americredit

---

[4] The accounting attached to the proof of claim reflects that $6,200.00 was realized on the sale of the collateral.

held an allowed secured claim in the amount of $17,418.47, the trustee had no responsibility to pay anything more than the prepetition arrears.

The debtor's failure to make the required post-petition payments to Americredit, and the subsequent grant of relief from the automatic stay to allow liquidation of the collateral, does not alter the analysis. Absent a modification of the plan, the trustee was under no obligation to make payments to Americredit simply because the debtor had defaulted. It is true, as Americredit argues, that secured creditors in such situations routinely file amended proofs of claim after liquidating their collateral. The effect of filing a proof of claim for a deficiency on disposition of the collateral is the withdrawal of the previous secured claim and its replacement by an unsecured claim. The trustee's payment of such claim presents no conceptual obstacle, because the form of chapter 13 plan used in this district already provides for the payment of allowed unsecured claims from the "pot" remaining after payment of secured and priority claims. But the timing of the claim may well present a practical obstacle unless the plan is sufficiently funded to pay it. Indeed, one of the important reasons for a firm claims bar date in chapter 13 is so the trustee will know the amount of the payment to which each creditor is entitled and to avoid the risk that the trustee might have to recapture payments already made to creditors who filed timely proofs of claim so as to accommodate a late-filed claim. *Nwonwu*, 362 B.R. at 709.

B.

Contrary to the suggestion by Americredit at oral argument, there is no absolute right to amend a proof of claim after the claims bar date. It is true that courts have generally allowed amendment, after the bar date has passed, of a timely-filed proof of claim to cure a defect in the claim as filed or to describe the claim with greater particularity, so long as the amendment will

not cause undue prejudice to the debtor or to other creditors. *In re Marohn*, 1997 WL 866612 at *4 (Bankr. E.D. Va., September 26, 1997) (citing *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811 (9th Cir. 1985)); *Unioil v. Elledge (In re Unioil, Inc.)*, 962 F.2d 988 (10th Cir. 1992) (amendment allowed of defective claim filed by individual to show trust as true creditor); *Newcomb v. United States (In re Newcomb)*, 60 B.R. 520 (Bankr. W.D. Va. 1986) (amendment of IRS claim allowed to add omitted quarter where chapter 13 plan had sufficient funds to pay amended claim). But a different result obtains when the late-filed amendment will prejudice administration of the estate. *United States v. Vlavianos (In re Vlavianos)*, 71 B.R. 789, 793-94 (Bankr. W.D. Va. 1986) (disallowing amendment of IRS proof of claim after debtor completed payments under chapter 13 plan in reliance on filed claim). Here, Americredit did not file an amended proof of claim asserting an unsecured claim until some five months after the claims bar date had passed and two months after the trustee had filed his report of completion of plan payments and the debtor had received a discharge. By the time the proof of claim was filed, the trustee had paid all timely-filed unsecured claims in full and had refunded the surplus to the debtor. Americredit argues that the trustee should be required to reopen the case, recover the refund from the debtor, and pay Americredit's claim. Americredit cites no authority for such a course, however, and none is apparent to the court. In any event, since Americredit's claim amendment was filed after the claims bar date, and at a point when administration of the case was already complete, the amendment will be disallowed.

C.

The court does note that Americredit may not be without a remedy. The debtor treated Americredit's claim under § 1322(b)(5), Bankruptcy Code, which allows a plan to "provide for

6

the curing of any default within a reasonable period of time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Because such debts, by their very treatment, will not have been fully paid upon completion of the plan, they are excluded from the discharge that is granted upon completion of all plan payments. § 1328(a)(1), Bankruptcy Code. In this case, the last payment on the installment sales contract was due on March 13, 2011, long after the last payment to be made under the plan. For that reason, the debtor's liability to Americredit has likely not been discharged. However, because a determination of dischargeability requires an adversary proceeding, *see* Fed.R.Bankr.P. 7001, the court declines to make a formal ruling as to dischargeability in the context of the present claim objection.[5]

    A separate order will be entered sustaining the trustee's objection and disallowing Americredit's amended claim.

Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

---

[5] In any event, if suit is brought against the debtor in a non-bankruptcy court to collect the amounts due, that court would have concurrent jurisdiction to determine whether the debtor's liability had been discharged. The debtor could, in such event, move to reopen her case in order to remove the collection action to this court. Alternatively, either party could move to reopen the case in order to litigate a dischargeability action in this court.

Copies to:

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

Sara A. John, Esquire
M. Richard Epps, P.C.
605 Lynnhaven Parkway
Virginia Beach, VA 23452
Counsel for Americredit Financial Services, Inc.

John P. Van Beek, Esquire
Young, Goldman & Van Beek
510 King Street, Suite 416
Alexandria, VA  22314
Co-counsel for Americredit Financial Services, Inc.

Charlotte Denise Ayres-Haley
20964 Promontory Square
Sterling, VA 20165
Debtor

John D. Sawyer, Esquire
Sawyer & Azarcon
10605 Judicial Drive, B-2
Fairfax, VA  22030
Counsel for the debtor